UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROGER SMITH,<br><br>                     Plaintiff,<br><br>    -v-<br><br>WESTCHESTER COUNTY, WESTCHESTER COUNTY DEPARTMENT OF CORRECTION, JOSEPH K. SPANO, as Commissioner, as former Deputy Commissioner and as an Individual, ROCCO POZZI, as former Commissioner and as an Individual, CLYDE S. ISLER, as Deputy Commissioner and as an Individual, FRED LANTZ, as Warden and as an Individual, CHARLES TURNER, as Deputy Warden and as an Individual, JOSEPHINE M. GIBSON, as Assistant Warden and as an Individual,<br><br>                   Defendants. | No. 09-CV-5866 (KMK)<br><br><u>OPINION AND ORDER</u> |

<u>Appearances</u>:

Roger Smith
Ossining, NY
*Pro Se Plaintiff*

Karen L. Zdanis, Esq.
*Assisted with Preparation of Plaintiff's Brief*

Irma W. Cosgriff, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendant*s

KENNETH M. KARAS, District Judge:

      Roger Smith ("Plaintiff"), a former correction officer for the Westchester County

Department of Correction, brings this action against Westchester County ("Westchester") and

Westchester County Department of Correction ("DOC"), as well as Joseph K. Spano ("Spano")

in his official capacity as DOC Commissioner and former Deputy Commissioner,  Rocco Pozzi ("Pozzi") in his capacity as former Commissioner, Clyde S. Isler ("Isler") in his capacity as Deputy Commissioner, Fred Lantz ("Lantz") in his capacity as Warden, Charles Turner ("Turner") in his capacity as Deputy Warden, and Josephine M. Gibson ("Gibson") in her capacity as Assistant Warden, (collectively, the "Individual Defendants").  All Individual Defendants also are sued in their individual capacities.  Plaintiff alleges violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*  Defendants have moved to dismiss Plaintiff's complaint, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), on the grounds that (1) Plaintiff failed to commence the action within the applicable statute of limitations, (2) Plaintiff failed to state a claim under the FMLA, and (3) Plaintiff failed to serve the Individual Defendants in accordance with Federal Rules of Civil Procedure 4(e) and 4(m).[1]

---

[1] Defendants have moved to dismiss "any claims contained in the Second Amended Complaint."  (Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") 1.)  However, at oral argument, Plaintiff informed the Court that he was no longer pursuing any claims under Title VII.  Thus, any claim brought pursuant to Title VII is dismissed.  The Court also notes that "individuals are not subject to liability under Title VII."  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (internal quotation marks omitted).

Additionally, in their Reply Memorandum of Law, Defendants state that "Westchester County, Department of Corrections is not a suitable entity" without elaborating or providing a reason.  (Reply Mem. of Law ("Defs.' Reply") 1 n.1.)  Defendants should be mindful that the Court usually "will not consider an argument raised for the first time in a reply brief."  *United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003).  However, several cases have held that "[u]nder New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued."  *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002); *see also Fanelli v. Town of Harrison*, 46 F. Supp. 2d 254, 257 (S.D.N.Y. 1999) (same); *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) ("A police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity.").

Accordingly, where both the municipality and the municipal agency have been named as defendants, courts have dismissed the claims against the agency.  *See Hall*, 185 F. Supp. 2d at 303 ("Because plaintiff has named the City of White Plains as a defendant, any claims against

For the reasons stated herein, Defendants' motion is granted in part and denied in part.

I. Background

For purposes of this Motion, the Court accepts as true all facts alleged by Plaintiff in his

Second Amended Complaint.

A.  Factual Background

1.  Plaintiff's FMLA Requests

Plaintiff was employed as a correction officer by Defendant DOC until he was terminated

on April 24, 2009.  (Second Am. Compl. ("SAC") ¶¶ 2-3.)  Plaintiff first took intermittent

---

the [White Plains Department of Public Safety ('WPDPS')] are redundant.  WPDPS does not have its own legal identity, and therefore the claims against it are dismissed."); *Manning v. Cnty. of Westchester*, No. 93-CV-3366, 1995 WL 12579, at *2 (S.D.N.Y. Jan. 5, 1995) (removing the Westchester County Police Department as a named defendant where the County of Westchester, as the real party in interest, was already a named defendant).  Courts also have substituted the municipality where only the agency had originally been named.  *See Arnold v. Westchester Cnty.*, No. 09-CV-3727, 2010 WL 3397375, at *4 (S.D.N.Y. Apr. 16, 2010) ("Rather than weigh in on the question of whether the Westchester County Department of Corrections is a suable entity, the Court may simply order the substitution of Westchester County as the proper party defendant in light of the fact that plaintiff apparently does not oppose such a substitution."), *adopted by* No. 09-CV-3727, 2010 WL 3397372 (S.D.N.Y. Aug. 25, 2010); *Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 416 n.4 (S.D.N.Y. 2008) ("The Department of Corrections Medical Department is a County agency, so the proper party Defendant is Westchester County."); *Butler v. Westchester Cnty.*, No. 94-CV-8216, 2000 WL 335539, at *1 n.2 (S.D.N.Y. Mar. 30, 2000) ("For purpose of this motion, the County of Westchester will be considered as the real party in interest without making a determination whether D.O.C. is a suable entity."); *Solis v. Cnty. of Westchester*, No. 94-CV-5102, 1995 WL 14072, at *1 (S.D.N.Y. Jan. 10, 1995) (replacing Westchester County DOC with the real party in interest, County of Westchester, as a named defendant).  *But see Linden v. Westchester Cnty.*, No. 93-CV-8373, 1995 WL 686742, at *1-2 (S.D.N.Y. Nov. 20, 1995) (concluding that the Westchester County DOC should remain a party to the action, given that defendants had offered no support for their contention that DOC was not a suable entity, DOC had previously appeared as a defendant in several § 1983 actions, and the municipal defendants were entitled to judgment on the merits).  Here, the Court concludes that the weight of authority supports the view that DOC is not a suable entity, and in light of the fact that Plaintiff will not be prejudiced by the removal of DOC as a named defendant – because Westchester County already is named and would be responsible for any resulting judgment – the Court will dismiss the claims against Defendant DOC.

FMLA leave to take care of his seriously ill mother on February 11, 2005.  (Decl. of Irma W. Cosgriff ("Cosgriff Decl.") Ex. C, at 000050.)[2]  On June 27, 2005, Plaintiff re-applied for FMLA leave.  (SAC ¶ 6.)  This request was denied on July 12, 2005.  (*Id.* ¶ 7.)  In August 2005, Defendant DOC reversed the denial and granted Plaintiff FMLA leave through October 12, 2005.  (*Id.* ¶ 8; Cosgriff Decl. Ex. C, at 000050-000051.)  At this time, Plaintiff was told to recertify the leave every three months (SAC ¶ 8), and was informed that if he "appl[ied] for FMLA leave in February 2006 for the same medical condition . . . and [he] d[id] not have the required 1250 hours [he] w[ould] be denied FMLA," (Cosgriff Decl. Ex. C, at 000050).  On October 12, 2005, Plaintiff submitted a medical certification to support extending his FMLA leave; Defendant DOC allegedly did not respond.  (SAC ¶ 9.)  Plaintiff continued to provide such certification every three months but the submissions purportedly were not acknowledged by Defendant DOC.  (*Id.* ¶ 19.)

On March 20, 2006, Defendant DOC denied a continuation of Plaintiff's FMLA leave because Plaintiff had not worked the required 1,250 hours in 2005, a statement which Plaintiff asserts was "knowingly false."  (*Id.* ¶ 22.)  The denial purported to include time/leave balances demonstrating that Plaintiff did not qualify; however, the attachment appears to contain a list of Plaintiff's leave dates between January 1 and February 10, 2006, instead of the total number of

---

[2] Plaintiff submitted a set of unnumbered documents to the Court as exhibits to a letter dated July 24, 2009, that Plaintiff wrote in support of his claims.  (Dkt. No. 8.)  The letter is not a pleading, and will not be considered in deciding the instant motion.  On December 15, 2009, the Court provided Defendants' counsel with a copy of the exhibits submitted by Plaintiff.  Defendants have Bates-stamped the exhibits and attached them as an exhibit to their motion to dismiss, along with other documents Defendants consider to be incorporated in or integral to the Second Amended Complaint.  As discussed below, the Court will consider some, but not all, of these documents in deciding the instant motion.  The Court will refer to these documents according to Defendants' numbering.

hours Plaintiff worked in the twelve months preceding his application for leave.  (Cosgriff Decl.

Ex. E.)  Plaintiff asserts that he was eligible for FMLA benefits because he had been employed

for the previous twelve months and had provided 1,250 hours of service during that twelve-

month period; however, it is not clear to what twelve-month period Plaintiff is referring.

(SAC ¶ 72.)  On October 24, 2006, Defendant Isler sent Plaintiff a letter denying an extension of

Plaintiff's FMLA leave, which, according to Plaintiff, was "four and one-half months late."

(*Id.* ¶ 38.)  Plaintiff claims that although he "had duly certified that his leave should continue

because he was still needed for his mother's care" (*id.* ¶ 39), Defendant DOC recorded each day

that Plaintiff missed as sick time instead of FMLA leave time, despite Plaintiff's alleged

entitlement to continued FMLA leave time, (*id.* ¶ 40).[3]  Plaintiff took intermittent FMLA leave

to take care of his mother until she died on October 24, 2006.  (*Id.* ¶ 38.)[4]

### 2.  Plaintiff's Attendance Review

On November 8, 2005, Plaintiff was "verbally counseled" by Captain Glenn Solitor for

Plaintiff's absence from work on days that Plaintiff asserts were covered by his FMLA leave;

Plaintiff states that Solitor said he was "ordered to do" so.  (*Id.* ¶¶ 12-13.)  Subsequently,

Plaintiff was ordered to appear before Defendant Turner for an attendance review hearing on

March 8, 2006.  (*Id.* ¶ 20.)  According to Plaintiff, after a union representative informed

Defendant Turner that Plaintiff's absences were covered by his FMLA leave, Defendant Turner

said that he would correct the error and no attendance review would take place.  (*Id.* ¶ 21.)

---

[3] The dates on which Plaintiff's FMLA leave was purportedly improperly recorded as
sick leave are unclear from the Second Amended Complaint.

[4] The Second Amended Complaint actually states that Plaintiff's mother died on October
24, 2009 (SAC ¶ 38); however, it is clear from the rest of the pleadings and Plaintiff's opposition
to the motion to dismiss that this is a typo, and October 24, 2006, is actually the correct date.

However, Plaintiff received another Attendance Review Status Memorandum on April 10, 2006. (*Id.* ¶ 24.)  On April 24, 2006, Plaintiff was placed under attendance review, which Plaintiff claims that Defendant Turner admitted was incorrect and promised to remedy, but did not.  (*Id.* ¶ 25.)  Subsequently, Defendant Gibson took over the attendance review, imposed disciplinary action, and barred Plaintiff from receiving overtime.  (*Id.* ¶ 26.)  The attendance review was based on Plaintiff's absence from work on dates that allegedly were "explicitly included in Plaintiff's FMLA leave," when each date purportedly had been "approved by Defendant Westchester County, its agents and employees as FMLA dates."  (*Id.* ¶¶ 34-35; Cosgriff Decl. Ex. C, at 000006.)  On June 23, 2006, Plaintiff's attendance review was extended to August 26, 2006, and he continued to be subject to the review until mid-September 2006.  (SAC ¶¶ 36-37.)

### 3.  Plaintiff's Allegations of Other Improper FMLA Conduct

When Plaintiff would call in his absence from work, an immediate supervisor who is not identified by Plaintiff allegedly "harass[ed] Plaintiff by slamming down the telephone each time" and "intentionally and incorrectly record[ed] Plaintiff's absences as sick days rather than FMLA days."  (*Id.* ¶ 11.)[5]  In early 2006, Plaintiff also discovered that his FMLA leave dates purportedly were "illegally" being recorded as sick days.  (*Id.* ¶ 17.)  At the end of 2005, Plaintiff carried over 264.10 hours of sick time, 140 hours of vacation time, .56 hours of holiday leave, and 35 hours of personal leave; credited hours which Plaintiff claims were removed from his record in 2006.  (*Id.* ¶ 10.)  Additionally, according to Plaintiff, Defendant DOC "incorrectly calculated Plaintiff's accrued sick time and deprived him of those earned benefits," though Plaintiff is not clear about the time frame of the error.  (*Id.* ¶ 18.)

---

[5] The Second Amended Complaint states that this alleged harassment occurred "[d]uring this same period," but the time frame of "this same period" is unclear.  (SAC ¶ 11.)

Upon returning to work from his FMLA leave, Plaintiff allegedly was sent home for failing to provide medical clearance to return to work, despite the fact that he himself was not sick. (*Id.* ¶ 41.) According to Plaintiff, Defendant Gibson agreed that medical clearance was unnecessary because the leave was for the care of a relative; however, Defendant Turner allegedly ordered that Plaintiff be sent home until he obtained the clearance. (*Id.*) When questioned by Defendant Gibson, Plaintiff claims that Defendant Turner "fraudulently and knowingly denied" that he had "blocked" Plaintiff's return to work in such a manner, but another employee, Captain Curry, allegedly confirmed that Defendant Turner had ordered that Plaintiff be sent home. (*Id.* ¶¶ 41-42.)[6]

### 4.  Plaintiff's Protests Regarding his FMLA Treatment

After the March 2006 denial of Plaintiff's FMLA request, Plaintiff submitted a complaint to the United States Department of Labor ("DOL"). (*Id.* ¶ 23.)[7]  Plaintiff alleges that the April 2006 attendance review hearing was convened after Plaintiff complained to the DOL, "in violation of and interference with Plaintiff's FMLA rights." (*Id.*)  Plaintiff also appealed the

---

[6] The Second Amended Complaint does not specify when this incident occurred.  The additional documents submitted by the Parties indicate that Plaintiff filed a grievance on September 13, 2006, stating that he had been sent home on August 14, 2006, and that the issue was resolved later that same day, at which time Plaintiff was unable to come into work due to his mother's care.  (Cosgriff Decl. Ex. C, at 000109-000111.)

[7] The Second Amended Complaint does not indicate the outcome of this complaint, but the Court takes judicial notice of the DOL's response, dated June 13, 2006, that is included in the additional documents submitted to the Court.  *See Riel v. Stanley*, No. 06-CV-5801, 2009 WL 2431497, at *3 (S.D.N.Y. Aug. 6, 2009) (stating that the Court could properly consider the findings and order of the DOL); *Golden Hill Paugussett Tribe of Indians v. Rell*, 463 F. Supp. 2d 192, 197 (D. Conn. 2006) ("Among the matters of which courts may take judicial notice are decisions of an administrative agency." (internal quotation marks omitted)).  The response states that the DOL investigator who "conducted a limited investigation . . . was unable to resolve the matter in [Plaintiff's] favor," and informs Plaintiff that the DOL "can take no further action on [his] behalf."  (Cosgriff Decl. Ex. C, at 000112.)

attendance review to Defendant Spano on April 30, 2006.  (*Id.* ¶ 27.)  In his appeal, Plaintiff

"included the FMLA Compliance guide," and informed Defendant Spano that Defendant DOC

was violating the FMLA and interfering with Plaintiff's FMLA rights.  (*Id.*)  Defendant DOC

denied Plaintiff's appeal on May 9, 2006, for failure to submit the appeal within the required

three days.  (*Id.* ¶ 28; Cosgriff Decl. Ex. C, at 000007.)  Additionally, on May 24, 2006, Plaintiff

filed a grievance under the collective bargaining agreement seeking to overturn the attendance

review and alleging FMLA violations.  (SAC ¶ 29; Cosgriff Decl. Ex. C, at 000104.)

Defendants allegedly did not respond.  (SAC ¶ 30.)  In May 2006, Plaintiff also sent a letter to

Defendant Spano stating that Defendant Spano and Defendant DOC "were violating the federal

FMLA statute and were interfering with Plaintiff's rights under the FMLA," and provided

Defendant Spano with Defendant DOC's FMLA policy.  (*Id.* ¶¶ 31-33; Cosgriff Decl. Ex. C, at

000106.)

### 5.  Plaintiff's Other Allegations of Harassment and Improper Acts

Plaintiff claims that beginning in November 2005, he was "harassed by his supervisors,

taken off his post, and ordered to perform duties outside his job description, all in violation of

the collective bargaining agreement," while no other correction officers were removed from their

posts.  (SAC ¶¶ 14-15.)  Plaintiff filed a grievance protesting this harassment on August 18,

2006.  (*Id.* ¶ 16; Cosgriff Decl. Ex. C, at 000108.)

In addition, Defendants allegedly withheld pay owed to Plaintiff from April 26, 2006,

through May 5, 2007.  (SAC ¶ 45.)  In November 2006, Defendant DOC purportedly admitted it

improperly had withheld thousands of dollars of Plaintiff's salary, and on May 5, 2007,

deposited $25,000 into Plaintiff's checking account as partial payment of back wages; however,

substantial compensation supposedly remained owed to Plaintiff.  (*Id.* ¶¶ 45-46.)  According to

Plaintiff, that deposit "constituted an admission by Defendants that they had deprived Plaintiff of a substantial and significant portion of his wages over a two year period."  (*Id.* ¶ 48.)

Plaintiff also sought help from an Employee Assistance Program ("EAP") because of the "great emotional distress" caused by the FMLA violations, his attendance reviews, his loss of overtime, and the non-payment of salary that was owed to him.  (*Id.* ¶43.)  Defendant Turner allegedly "interfered with Plaintiff's participation in the EAP, tried to force him to stop attending, and harassed" him for attending.  (*Id.* ¶ 44.)

### 6.  Plaintiff's Termination

Plaintiff claims that on December 11, 2006, Defendants filed false charges, improperly imposed discipline, and engaged in malicious prosecution against Plaintiff, which resulted on November 30, 2007, in a "coerced and fraudulently induced settlement agreement . . . that contributed to Plaintiff's loss of benefits, compensation, and employment."  (*Id.* ¶ 49.)[8] According to Plaintiff, these allegedly false charges also caused him to suffer a bleeding ulcer and severe depression.  (*Id.* ¶ 50.)  On April 24, 2009, Plaintiff's employment was terminated, and his termination was affirmed by a hearing held pursuant to § 73 of the New York Civil Service Law on May 28, 2009.  (*Id.* ¶ 3.)  Plaintiff has alleged that the termination was the "culmination of a pattern and practice of continuing violation of Plaintiff's rights" under the FMLA that occurred from June 25, 2005, through May 28, 2009.  (*Id.* ¶¶ 4, 77.)

### B.  Procedural History

Plaintiff, represented at the time by counsel, commenced his action in state court on April 1, 2009, and filed an Amended Complaint on May 28, 2009.  At these points, the Individual

---

[8] The Second Amended Complaint does not provide the substance or nature of either the charges or the settlement.

Defendants were not served. After consulting with Plaintiff's counsel, Defendants filed a Notice of Removal on June 25, 2009. (Dkt. No. 1.) Plaintiff initially contested the removal (Dkt. Nos. 2, 4), but on September 10, 2009, consented to the case proceeding in this Court, (Dkt. No. 5). On November 5, 2009, the Court issued an Order relieving Plaintiff's counsel, and allowing Plaintiff to proceed pro se.[9] (Dkt. No. 10.) Pursuant to permission from the Court, on October 30, 2009, Plaintiff filed a Second Amended Complaint that had been prepared by his former counsel. (Dkt. Nos. 7, 11.) On the same date, the Clerk of Court docketed a July 24, 2009 letter from Plaintiff with attached exhibits. (Dkt. No. 8.)

On December 21, 2009, the Court was informed that the Individual Defendants had not been served (Dkt. No. 15), and as of January 26, 2010, Defendants Pozzi and Spano still had not been served, (Dkt. No. 16). After Plaintiff represented that all Defendants had been served by Plaintiff's former counsel, the Court directed Plaintiff to re-serve Defendants Pozzi and Spano. (Dkt. No. 17.) On April 14, 2010, Defendants filed the instant motion to dismiss all of Plaintiff's claims in the Second Amended Complaint. (Dkt. No. 23.) Plaintiff continues to proceed pro se, but was assisted by an attorney in preparing his opposition papers. (Dkt. No. 30.) On April 21, 2010, Plaintiff submitted a sur-reply in the form of a letter to the Court, which the Court agreed to consider. (Dkt. No. 29.) The Court heard oral argument on November 18, 2010. (Dkt. No. 31.)

---

[9] The Court relieved Plaintiff's counsel after the counsel submitted a letter to the Court stating that he and Plaintiff had agreed to discontinue the attorney-client relationship and that Plaintiff had signed a substitution of attorney. (Dkt. No. 6.)

## II.  Discussion

### A.  Standard of Review

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's

factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Gonzalez

v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008); *see also Ruotolo v. City of New York*,

514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint

pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all

reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)).

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555 (2007) (second alteration in *Twombly*) (citations omitted).  Instead,

the Court has emphasized that "[f]actual allegations must be enough to raise a right to relief

above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be

supported by showing any set of facts consistent with the allegations in the complaint," *id.* at

563.  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."

*Id.* at 570.  If a plaintiff "ha[s] not nudged his claims across the line from conceivable to

plausible, his complaint must be dismissed."  *Id.*; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.  But where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the

pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).  "To be incorporated by reference, the [c]omplaint must make a clear, definite and substantial reference to the documents." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002).  Additionally, even if not attached or incorporated by reference, a document upon which the complaint "solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (internal quotation marks and emphasis omitted); *see also Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005) ("It is well-established that the court may consider a document, even if not attached or incorporated by reference, where the complaint relies heavily upon its terms and effect, thus rendering the document 'integral' to the complaint." (internal quotation marks omitted)).

The Second Circuit has emphasized that "before materials outside the record may become the basis for a dismissal, several conditions must be met." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document . . . [and] that there exist no material disputed issues of fact regarding the relevance of the document." *Id.*; *see also Landon v. Cnty. of Orange*, No. 08-CV-8048, 2009 WL 2191335, at *5 n.5 (S.D.N.Y. July 23, 2009) ("[T]he court may consider a document that is 'integral' to the

12

complaint, partially quoted in the complaint, or relied upon by the plaintiff in drafting the complaint if there is no dispute regarding the document's authenticity or accuracy, and there is no issue of fact as to its relevance.").

In the instant motion, Defendants attached documents sent by Plaintiff to the Court, along with additional exhibits.  (Cosgriff Decl. Exs. C-G.)  Defendants maintain that the Court can consider these documents in deciding this motion because they are "incorporated in the Second Amended Complaint" and integral to it.  (Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") 2 n.2.)  Defendants have included a list of each document and the paragraph in the Second Amended Complaint to which it is supposedly related.  (Cosgriff Decl. ¶¶ 6-10.)  Some of these exhibits clearly are not incorporated by reference or integral to the Second Amended Complaint, and as such will not be considered at this time.[10]  Other documents are either expressly referenced in the Second Amended Complaint or simply provide documentation of an event that Plaintiff alleges occurred.  Thus, the Court could consider them in deciding the instant motion; however, as they add no new facts to those included in the Second Amended Complaint, the Court will not rely on these documents.[11]  In deciding this motion, the Court did

---

[10] These include: cases, articles, treatises, and DOL website printouts (Cosgriff Decl. Ex. C, at 000010-000023, 000122-000222); Defendant DOC's letter denying Plaintiff's FMLA request on May 1, 2006, when this denial is not mentioned in the Second Amended Complaint (*id.* at 000052); and direct deposit confirmation slips indicating Plaintiff's leave balances on various dates from March 2005 through May 2007, that are not clearly referred to in, nor integral to, the Second Amended Complaint, (*id.* at 000057-000058, 000069-000092).

[11] These documents include, *inter alia*: the November 8, 2005, verbal counseling form (Cosgriff Decl. Ex. C, at 000003); the attendance review hearing forms dated March 8 and April 10, 2006 (*id.* at 000004-000005); the memorandum extending Plaintiff's attendance review on June 23, 2006 (*id.* at 000008); medical certification forms submitted by Plaintiff (*id.* at 000025-000047); Defendant DOC's letters denying Plaintiff's FMLA request on October 24, 2006, and July 12, 2005 (*id.* at 000048, 000054); and forms Plaintiff submitted to DOC for dates that he used FMLA leave, (*id.* at 000059-000067).

13

consider some additional documents that were incorporated by reference in the Second Amended

Complaint.  These documents are cited in the factual background section above.[12]

### B.  FMLA Claims

The FMLA grants eligible employees the right "to a total of 12 workweeks of leave

during any 12-month period . . . to care for the spouse, or a son, daughter, or parent, of the

employee, if such spouse, son, daughter, or parent has a serious health condition."  29 U.S.C.

§ 2612(a)(1)(C).  This leave may be taken "intermittently or on a reduced leave schedule when

medically necessary."  *Id.* § 2612(b)(1); *see also Parker v. City of New York*, No. 04-CV-2257,

2006 WL 1495410, at *3 (E.D.N.Y. May 26, 2006) (stating that an employee was entitled to take

leave intermittently if she could prove it was medically necessary).  It may be provided unpaid,

---

[12] These include: the April 26, 2006 Attendance Review Status Memorandum listing thirteen dates on which Plaintiff was absent, with FMLA written next to seven of the dates (Cosgriff Decl. Ex. C, at 000006); Defendant DOC's denial of Plaintiff's attendance review appeal on May 9, 2006 (*id.* at 000007); Defendant DOC's letter granting Plaintiff FMLA leave on August 5, 2005 (*id.* at 000050-000051); Plaintiff's grievance forms submitted on May 24, August 18, and September 13, 2006 (*id.* at 000104, 000108-000111); Plaintiff's letter to Defendant Spano alleging FMLA violations (*id.* at 000106); and Defendant DOC's letter denying Plaintiff FMLA leave on March 20, 2006, (*id.* Ex. E).

In addition, documents filed with the EEOC or the DOL, and determinations issued by those agencies, are records of administrative proceedings which may properly be relied upon in connection with the Court's review of a motion to dismiss.  *See, e.g.*, *Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.*, 690 F. Supp. 2d 115, 124 (W.D.N.Y. 2010) (taking judicial notice of the defendant employer's response to the plaintiff's EEOC charges, including attachments to the response); *Riel*, 2009 WL 2431497, at *3 (stating that the court could properly consider the findings and order of the DOL); *Golden Hill Paugussett*, 463 F. Supp. 2d at 197 (stating that courts may take judicial notice of administrative agency decisions); *Muhammad v. N.Y.C. Transit Auth.*, 450 F. Supp. 2d 198, 204-05 (E.D.N.Y. 2006) ("[P]laintiff's EEOC charge and the agency's determination are both public records, of which this Court may take judicial notice.").  Accordingly, the Court may also take judicial notice of letters sent by the DOL to Plaintiff on July 13, 2006, and October 16, 2006, informing him that the DOL was unable to resolve Plaintiff's FMLA complaints in his favor (Cosgriff Decl. Ex. C, at 000112-000113); Plaintiff's EEOC Complaint dated October 5, 2007 (*id.*, at 000115-000119); and Westchester County's position statement submitted to the EEOC in response on April 4, 2008, (*id.* Ex. D).

29 U.S.C. § 2612(c); *see also Fulham v. HSBC Bank USA*, No. 99-CV-11054, 2001 WL 1029051, at *3 (S.D.N.Y. Sept. 6, 2001) ("The FMLA explicitly permits employers to provide FMLA leave on an unpaid basis."), or "an employer may require the employee[] to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for leave provided under [29 U.S.C. § 2612(a)(1)(C)] for any part of the 12-week period of such leave," 29 U.S.C. § 2612(d)(2)(B); *see also Santos v. Knitgoods Workers' Union, Local 155*, 252 F.3d 175, 178 (2d Cir. 2001) ("The FMLA allows employees 'to substitute any of the accrued paid . . . sick leave . . . for . . . any part of the 12-week period of such leave [provided for in the FMLA].'" (alterations in original) (quoting 29 U.S.C. § 2612(d)(2)(B))).  Furthermore, the FMLA grants an employee "the right to be reinstated to the former position or an equivalent position at the end of leave." *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004); *see also* 29 U.S.C. § 2614(a)(1).  In addition, "[t]he taking of [FMLA] leave . . . shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." *Id.* § 2614(a)(2).

To ensure the availability of these rights, the FMLA makes it illegal for employers to: (1) "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided under the FMLA; or (2) "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA.  *Id.* § 2615(a); *see also Di Giovanna v. Beth Isr. Med. Ctr.*, 651 F. Supp. 2d 193, 198 (S.D.N.Y. 2009) ("Interfering with, restraining or denying an employee's rights under the FMLA is unlawful."); *Ferguson v. Lander Co.*, No. 06-CV-328, 2008 WL 921032, at *19 (N.D.N.Y. Apr. 2, 2008) ("[C]ourts have recognized that the Act prohibits an employer from retaliating against or otherwise taking adverse employment action with respect to an employee who has exercised his or her rights

15

under the FMLA."); *Lepore v. N.Y. Hotel Trades Council, Emp'r Benefit Funds*, No. 05-CV-6165, 2005 WL 3030839, at *3 (S.D.N.Y. Nov. 10, 2005) ("It is unlawful for an employer to interfere with the exercise or attempted exercise of any rights provided under the [FMLA]," and "[i]t goes without saying that employers may not retaliate against any individual should he or she oppose any practice made unlawful by the [FMLA]." (internal quotation marks omitted)). Therefore, employers may not "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies." 29 C.F.R. § 825.220(c).[13] Employers also are prohibited from discriminating against any employee for filing any charge or instituting any proceeding under or related to the FMLA. *See* 29 U.S.C. § 2615(b)(1); *see also Merli v. Bill Commc'ns, Inc.*, No. 01-CV-359, 2002 WL 424649, at *5 n.5 (S.D.N.Y. Mar. 18, 2002) ("[I]t is forbidden for an employer to discharge or in any other manner discriminate against any individual who [] has filed a charge or instituted a proceeding under the FMLA." (internal quotation marks omitted)); *Mann v. Mass. Correa Elec., J.V.*, No. 00-CV-3559, 2002 WL 88915, at *5 (S.D.N.Y. Jan. 23, 2002) (stating that the FMLA protects an employee against retaliation based on the employee's participation in FMLA proceedings).

Employers who violate § 2615 are liable to any eligible employee for "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation," 29 U.S.C. § 2617(a)(1)(A)(i)(I), in addition to interest, liquidated damages in the case of willful violations, and other equitable relief, including reinstatement, *id.* § 2617(a). Thus, "[t]he FMLA creates a private right of action" for employees whose "employer[s] interfere with,

---

[13] The FMLA expressly gives the Secretary of Labor authority to "prescribe such regulations as are necessary" to carry out the Act. 29 U.S.C. § 2654.

16

restrain, or deny the exercise of FMLA rights." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (internal quotation marks omitted). The Second Circuit has recognized two types of FMLA claims – "interference" claims and "retaliation" claims. *Potenza v. City of New York,* 365 F.3d 165, 168 (2d Cir. 2004) (per curiam). Plaintiff asserts both types of claims here.

### 1.  Statute of Limitations

The statute of limitations for most FMLA claims is two years. *See* 29 U.S.C. § 2617(c)(1) ("[A]n action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought."). However, a three-year statute of limitations exists for willful FMLA violations. *See id.* § 2617(c)(2) ("In the case of such action brought for a willful violation of section 2615 of this title, such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought."). An alleged FMLA violation is willful if an employer either knew or recklessly disregarded whether its conduct violated the FMLA. *See Porter v. N.Y. Univ. Sch. of Law,* 392 F.3d 530, 531-32 (2d Cir. 2004) (per curiam). However, if an employer acted reasonably, or unreasonably but not recklessly in determining whether its actions were illegal, the alleged violations should not be considered willful. *See id.*

Defendants argue that any alleged violations were not willful, and thus the two-year statute of limitations should apply. (Defs.' Mem. 16-17.) Plaintiff argues that the violations were willful, triggering the three-year statute of limitations. (Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") 17-19.)[14] Indeed, Plaintiff has pled that the violations were

_____

[14] Plaintiff also alleges that Defendants committed a "continuing violation" of his FMLA rights culminating in his April 2009 termination (SAC ¶ 3-4), apparently in an attempt to have the Court consider all of the events alleged in his Second Amended Complaint, including those pre-dating the three-year statute of limitations period for a willful violation. Plaintiff has not

willful.  (SAC ¶¶ 4, 51.)  Additionally, he alleges that: on multiple occasions he informed

Defendants that they were violating his FMLA rights (*id.* ¶¶ 27, 32); certain Defendants made

knowingly false statements regarding his FMLA eligibility (*id.* ¶ 22); and the violations were

"knowing and willful" because Defendants were "fully aware of FMLA law and policy, knew

they were violating [the] FMLA[,] and nevertheless continued their illegal behavior," (*id.* ¶¶ 51-

52).  Thus, Plaintiff has alleged facts that, if proven true, would establish a willful violation.  *See*

*Cinelli v. Oppenheim-Ephratah Cent. Sch. Dist.*, No. 07-CV-235, 2009 WL 4724670, at *3

---

pointed to any case law applying the continuing violation doctrine to the FMLA.  In fact, the
weight of authority leans decidedly against Plaintiff.  *See Burgess v. JHM Hotels, LLC*, No. 08-
CV-3919, 2010 WL 1493129, at *5 n.3 (D.S.C. Mar. 18, 2010) (noting that the "propriety" of
applying the continuing violation doctrine "in FMLA cases has been called into doubt");
*Shepard v. United States*, No. 09-CV-10457, 2009 WL 3106554, at *1 (E.D. Mich. Sept. 18,
2009) ("[T]here is no legal precedent for applying the continuing violations doctrine to FMLA
claims."); *Tafelski v. Novartis Pharm.*, No. 05-CV-71547, 2007 WL 1017302, at *4 (E.D. Mich.
Mar. 28, 2007) ("Plaintiff cites no authority in which the continuing violations doctrine has been
applied to actions under the FMLA.").

       In any event, even if the continuing violation doctrine applied in FMLA cases, it would
not fit here.  "The continuing violation doctrine applies to cases involving specific discriminatory
policies or mechanisms," and "multiple incidents of discrimination, even similar ones, that are
not the result of a discriminatory policy or mechanism do not amount to a continuing violation."
*Valtchev v. City of New York*, No. 09-CV-4145, 2010 WL 4595539, at *1 (2d Cir. Nov. 15,
2010) (summary order) (internal quotation marks omitted).  The doctrine delays "the
commencement of the statute of limitations period . . . until the last discriminatory act in
furtherance of" the alleged discriminatory policy.  *Shomo v. City of New York*, 579 F.3d 176, 181
(2d Cir. 2009) (internal quotation marks omitted).  Courts in the Second Circuit "have been loath
to apply [the continuing violation doctrine] absent a showing of compelling circumstances."
*Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (internal
quotation marks omitted).  In this case, Plaintiff, by his own admission, believed that his FMLA
rights were violated as far back as 2005.  Moreover, Plaintiff has failed to allege *facts* (as
opposed to conclusory legal claims) establishing that Defendant Westchester has "a specific
discriminatory polic[y]" that violates the FMLA, *Valtchev*, 2010 WL 4595539, at *1 (quoting
*Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993)), or "an ongoing unlawful employment
practice" of violating the FMLA, *Shepard*, 2009 WL 3106554, at *1 (internal quotation marks
omitted), or that there is any causal nexus between his 2009 termination and his invoking his
FMLA rights.  Indeed, Plaintiff's own allegations establish that he last sought leave under the
FMLA in 2006, and nowhere in his attorney-drafted Second Amended Complaint does Plaintiff
make any plausible factual claim that he was terminated because he exercised his FMLA rights.

(N.D.N.Y. Dec. 2, 2009) (concluding that the three-year statute of limitations for willful

violations applied because there were disputed issues of fact as to whether the defendant

recklessly disregarded the plaintiff's need to take FMLA leave, where the defendant was aware

of the plaintiff's children's serious medical condition, and the plaintiff alleged that she submitted

an application for additional sick time with articulated reasons); *Krosmico v. JP Morgan Chase

& Co.*, No. 06-CV-1178, 2006 WL 3050869, at *2 (E.D.N.Y. Oct. 19, 2006) ("When a plaintiff

sufficiently alleges facts supporting the claimed violation of the FMLA, a general averment as to

willfulness should be sufficient to trigger the three-year limitations period." (internal quotation

marks omitted)).  Accordingly, the three-year statute of limitations will apply, and in deciding

this motion to dismiss the Court will consider events that occurred beginning on April 1, 2006.[15]

### 2.  FMLA Interference Claim

In an FMLA interference claim, "an employee asserts that his employer denied or

otherwise interfered with his substantive rights under the Act." *Id.*[16]  To state an interference

---

[15] Plaintiff commenced his action in state court on April 1, 2009.  The Second Amended Complaint was not filed until October 30, 2009.  "Provided the amended pleading is based on the same series of transactions and occurrences alleged in the original pleading, the revised pleading will relate back to the original pleading, even where the revised pleading contains legal theories not included in the original." *White v. White Rose Food*, 128 F.3d 110, 116 (2d Cir. 1997); *see also Kamtaprassad v. Chase Manhattan Corp.*, No. 00-CV-8834, 2001 WL 1662071, at *4-5 (S.D.N.Y. Dec. 28, 2001) (assessing statute of limitations based on the date the first amended complaint was filed, because under Fed. R. Civ. P. 15(c)(2), the second amended complaint shared a "common core of operative facts" with the earlier timely-filed complaint).  Here, Defendants have not contested that the allegations in the Second Amended Complaint arise from the same core facts as those set forth in the initial Complaint; thus relation-back applies and the April 1, 2009, date will be used for statute of limitations purposes.

[16] Defendants assert that "Plaintiff has abandoned his claims of FMLA interference." (Defs.' Reply 10.)  The Court disagrees.  In his opposition papers, Plaintiff reiterates that Defendants violated the FMLA by interfering with his rights, and responds to Defendants' argument regarding his FMLA eligibility.  (Pl.'s Opp'n 2, 15-16.)  Plaintiff also addressed the merits of this claim in his sur-reply letter, which the Court agreed to consider.  (Dkt. No. 29.)

claim under 29 U.S.C. § 2615(a)(1), a plaintiff must adequately plead: (1) that he is an eligible employee under the FMLA; (2) that the defendant is an employer as defined in the FMLA; (3) that he was entitled to leave under the FMLA; (4) that he gave notice to the defendant of his intention to take leave; and (5) that he was denied benefits to which he was entitled under the FMLA.  *See Geromanos*, 322 F. Supp. 2d at 427.

### a.  Plaintiff's FMLA Eligibility

To be "eligible" under the FMLA, an employee must have been employed "(i) for at least twelve months by the employer . . . and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period."  29 U.S.C. § 2611(2)(A); *see also Woodford v. Cmty. Action of Greene Cnty., Inc.*, 268 F.3d 51, 54 (2d Cir. 2001) ("In order to be eligible for FMLA benefits, an employee must have been employed for at least twelve months with an employer and have worked at least 1,250 hours in the twelve months preceding the date on which eligibility is determined.").  "The determination of whether an employee . . . [is eligible] must be made as of the date the FMLA leave is to start."  29 C.F.R. § 825.110(d).  Eligibility is a threshold issue, and it is insufficient for Plaintiff to "merely assert[] in a conclusory manner that he is eligible without stating any facts that relate to the definition of an eligible employee." *Spurlock v. NYNEX*, 949 F. Supp. 1022, 1033 (W.D.N.Y. 1996).  Additionally, simply alleging that the employee was "employed full-time" is not enough to establish the 1,250 hour requirement.  *Simmons v. N.Y.C. Transit Auth.*, No. 96-CV-3414, 2001 WL 984905, at *2 (E.D.N.Y. July 6, 2001) (internal quotation marks omitted).

Here, Plaintiff does not "merely assert" that he was eligible.  He states that "he had been employed for the previous twelve (12) months and had provided 1,250 hours of service during that 12 month period."  (SAC ¶ 72.)  Additionally, Plaintiff alleges that his request for FMLA

leave was denied due to the "false statement" that he had not worked the required hours (*id.* 22), thus implying that he had worked 1,250 hours.  Defendants have not contested that Plaintiff was employed for twelve months; indeed, they admit that Plaintiff has been employed by Defendant DOC since "on or about September 19, 1977." (Defs.' Mem. 3.)  However, Defendants argue that Plaintiff does not properly allege that he worked the required 1,250 hours.  (*Id.* at 11.)

The Court finds that as currently pled, the Second Amended Complaint is deficient. Plaintiff alleges that he "had provided 1,250 hours of service" during the previous twelve months, but does not specify the twelve-month period to which he is referring.  Plaintiff was initially granted FMLA leave on February 11, 2005.  (Cosgriff Decl. Ex. C, at 000050.)  That approval entitled him to take up to "12 workweeks of leave" during the next twelve months, *see* 29 U.S.C. § 2612(a)(1), that ended on February 11, 2006.  Thus, if Plaintiff sought to use more FMLA leave after that twelve-month period concluded, he would again need to meet the FMLA eligibility requirements at the time he requested the leave.  Accordingly, Plaintiff must plead that he had worked the required number of hours in the twelve months preceding the dates for which he requested FMLA leave after February 11, 2006.

Plaintiff states that his application for FMLA leave was denied on October 24, 2006, "four and one-half months late."  (SAC ¶ 38.)  However, he has not specified on what date he applied for leave, or when the leave was to begin; thus, he has not pled that he worked 1,250 hours in the applicable twelve-month period.  *See Spurlock*, 949 F. Supp. at 1033 (noting that complaint was deficient because the plaintiff failed to provide specific dates establishing FMLA leave eligibility).  Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's FMLA interference claim, but given that the Court finds that Plaintiff has otherwise properly stated a claim, the Court grants Plaintiff leave to amend pursuant to Federal Rule of Civil

21

Procedure 15(a) to properly allege compliance with the eligibility requirements.[17]  *See Ingrassia v. Cnty. of Sullivan*, 262 F. Supp. 2d 116, 120 (S.D.N.Y. 2003) (granting the defendant's motion to dismiss because the plaintiff failed to specify that she worked the necessary hours in the correct time period, but allowing the plaintiff to amend to cure the deficiency).

### b.  Defendant DOC's Status as an Employer Under the FMLA

Under the FMLA, "employer" means "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i).  Furthermore, "employer" is specifically defined to "include[] any 'public agency', as defined in [29 U.S.C. §] 203(x)."  *Id.* § 2611(4)(iii).  FMLA claims have been dismissed for failure to specifically plead that an employer is subject to the requirements of the FMLA.  *See Vicioso v. Pisa Bros.*, No. 98-CV-2027, 1998 WL 355415, at *2 (S.D.N.Y. July 1, 1998) (stating that the plaintiff had not properly pled that the employer was covered by the FMLA); *Spurlock*, 949 F. Supp. at 1033 (dismissing FMLA claim in part because the plaintiff did not specifically address the statutory requirements to establish that the defendant was an employer).  Although Defendants have not disputed that Defendant DOC is an employer under the FMLA, the Second Amended Complaint does not explicitly allege that Defendant DOC is a

---

[17] As noted, the proper inquiry is the number of hours worked in the twelve months preceding the date upon which FMLA leave is to begin.  29 C.F.R. § 825.110(d).  Thus, whether Plaintiff worked 1,250 hours in all of 2006 (Aff. of Roger Smith ("Smith Aff.") ¶ 8), is not relevant.  If Plaintiff amends, he should specify each time he requested or was denied leave after April 1, 2006, and whether he had worked the required 1,250 hours in the twelve months preceding those dates for which he requested leave.

covered employer.[18]  This deficiency also warrants dismissal of Plaintiff's FMLA interference

claim, but without prejudice to allow Plaintiff to amend to comply with the pleading

requirements.

### c.  Plaintiff's Entitlement to FMLA Leave

An eligible employee is entitled to FMLA leave, inter alia, "[i]n order to care for the

spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent

has a serious health condition."  29 U.S.C. § 2612(a)(1)(C).  Plaintiff has adequately pled that he

was entitled to leave to care for his mother, who had "a serious health condition," from April 1,

2006, (the statute of limitations cut-off date) until the death of his mother on October 24, 2006.

Plaintiff alleges that he was needed to care for his "seriously ill mother" and that he submitted

medical certifications to that effect every three months during this period.  (SAC ¶¶ 6, 19, 39.)

### d.  Plaintiff's Notice to Defendant of His Intention to Take Leave

Defendants have not contested this element.  However, the Court notes that although

Plaintiff alleges that he would call in his FMLA absences (*Id.* ¶ 11), and that Defendants knew

he had FMLA leave (*id.* ¶ 21), he does not actually specify each day that he used FMLA leave.

Therefore, if Plaintiff chooses to file amended pleadings, he should specify each day that he used

FMLA leave, and that he gave the required notice each time he used such leave.

### e.  Defendants' Denial of Plaintiff's FMLA Benefits

Plaintiff alleges a variety of incidents that he believes constituted a denial of his FMLA

benefits.  As noted above, the Court will not consider events that occurred prior to April 1, 2006.

Additionally, if Plaintiff is able to establish a violation of his FMLA rights, he can only recover

---

[18] The status of the Individual Defendants as employers under the FMLA is discussed *infra* II.B.3.

damages from Defendants to the extent that he was harmed as a result of the violation.  *See Alessi v. Monroe Cnty.*, No. 07-CV-6163, 2010 WL 161488, at \*7 (W.D.N.Y. Jan. 13, 2010) (noting that an "employee can only recover to the extent that the [FMLA] violation caused him injury"); *see also Ferguson*, 2008 WL 921032, at \*18-20 (stating that recovery for technical FMLA violations requires that the violation interfered with the exercise of FMLA rights).  For example, the FMLA "provides for compensatory damages equal to the amount of wages, salary, employment benefits, or other compensation the employee was denied or lost."  *Alessi*, 2010 WL 161488, at \*7 (citing 29 U.S.C. § 2617(a)(1)(A)(i)(I)).

Plaintiff alleges several incidents that are sufficient to survive the instant motion.  These include Plaintiff's claims that: (1) his FMLA leave request was improperly denied on October 24, 2006 (SAC ¶ 38); (2) he was placed on attendance review due to his FMLA absences, causing him to lose the right to earn overtime (*id.* ¶¶ 24-26, 34-37), in violation of 29 C.F.R. § 825.220; and (3) when he returned to work, his reinstatement was blocked for failing to obtain medical clearance, even though his FMLA leave was to care for a relative and not for himself, (*id.* ¶ 41).[19]  These acts, if proven true, interfered with Plaintiff's exercise of his FMLA rights.

Plaintiff also has alleged that Defendants illegally recorded his FMLA days as sick days in "early 2006" and removed his accrued vacation, sick, holiday, and personal leave time from

---

[19] FMLA regulations provide that: "[a]s a condition of restoring an employee whose FMLA leave was occasioned by the employee's *own serious health condition* that made the employee unable to perform the employee's job, an employer may have a uniformly-applied policy or practice that requires all similarly-situated employees . . . who take leave for such conditions to obtain and present certification from the employee's health care provider that the employee is able to resume work."  29 C.F.R. § 825.312(a) (emphasis added).  By alleging that Defendants sent him home for failure to obtain medical clearance, Plaintiff has adequately alleged that Defendants interfered with his right to reinstatement following his FMLA leave, in violation of 29 U.S.C. § 2614(a).

his record during 2006.  (*Id.* ¶¶ 10-11, 17-18, 40.)[20]  While an employer may require an employee to substitute accrued paid leave for unpaid FMLA leave, *see* 29 C.F.R. § 825.207(a), "the employer must inform the employee of this designation at the time of designating the FMLA leave," *id.* § 825.300(d)(1).  Defendant DOC's initial approval of Plaintiff's request for FMLA leave did not state that Plaintiff's accrued time would be substituted.  (Cosgriff Decl. Ex. C, at 000050-000051.)[21]  "Failure to follow the notice requirements set forth in this section may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights."  29 C.F.R. §825.300(e).   "An employer may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered."  *Id.*  Furthermore, as already noted, even if the accrued time was properly substituted for FMLA leave from a salary perspective, those days cannot count towards a no-fault attendance policy such as the attendance review imposed here.  *See id.* § 825.220(c).  Moreover, it would be unlawful, regardless of notice, for Defendants to remove any accrued time above the amount of FMLA leave taken by Plaintiff. *See* 29 U.S.C. § 2614(a)(2) ("The taking of leave under section 2612 of the title shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced.").  Therefore, if Plaintiff chooses to amend his complaint, to the extent these acts

---

[20] Plaintiff has not specified when in 2006 these actions occurred.  If they occurred after April 1, 2006, they also could state a claim for FMLA interference.

[21] It is not clear if substitution occurred or not.  Plaintiff states that his FMLA days were recorded as sick days (without specifying if he was paid for the days) and that the accrued time was removed – thus, implying, but not actually stating, that he was not paid out for those days. (SAC ¶¶ 10-11, 17-18, 40.)

occurred after April 1, 2006, he should add the specific dates on which the time was removed, and in what amounts.[22]

By contrast, some of Plaintiff's other allegations amount to technical violations that do not state a claim for FMLA interference.  For example, Plaintiff alleges that Defendants took four-and-a-half months to respond to his request for FMLA leave.  (SAC ¶ 38.)  This pleads a technical FMLA violation, because "[w]hen an employee requests FMLA leave . . . the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances."  29 C.F.R. § 825.300(b)(1).  However, Plaintiff has not alleged the specific harm caused by the delay, such as whether he did not take FMLA days because he was waiting for approval.  Indeed, the Second Amended Complaint indicates that Plaintiff continued to take days off and designate them as FMLA leave even though his request had not been granted; therefore, Plaintiff has not alleged that the delay caused him harm beyond the injury caused by the eventual denial of his request.  Plaintiff also asserts that his supervisor harassed him by slamming down the telephone whenever he called in FMLA leave.  (SAC ¶ 11.)  Discouraging an employee from using FMLA leave could violate the employee's FMLA rights.  *See* 29 C.F.R. § 825.220(b).  And, while the harassment alleged by Plaintiff could be construed as such discouragement, Plaintiff has not alleged that he did not take his FMLA leave as a result.

Accordingly, except for the deficient pleadings of the hours-worked requirement and Defendant DOC's status as a covered FMLA employer, Plaintiff has stated a claim for FMLA

---

[22] Plaintiff also asserts that, between April 26, 2006 and May 5, 2007, Defendants withheld thousands of dollars of his salary before depositing $25,000 – some, but not all, of what Plaintiff claims he is owed – into his checking account.  (SAC ¶¶ 45-46.)  However, Plaintiff does not allege what type of compensation was withheld, or what, if any, connection this has to his FMLA rights, particularly as FMLA leave may be provided unpaid.  He can address this in his Third Amended Complaint.

interference sufficient to survive a motion to dismiss.  Thus, Defendants' motion to dismiss

Plaintiff's FMLA interference claim is granted in part, but Plaintiff is allowed leave to amend his

complaint to cure any deficiencies, and to the extent applicable, may add greater specificity as

indicated with respect to the dates on which he requested and used FMLA leave, and the dates on

which some of the alleged acts of interference occurred.[23]

### 3.  FMLA Retaliation Claim

In an FMLA retaliation claim, "an employee asserts that his employer discriminated

against him because he engaged in activity protected by the Act."  *Krosmico*, 2006 WL 3050869,

at *2.  To state a claim for retaliation under the FMLA, Plaintiff must allege that: "1) he

exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered

an adverse employment action; and 4) the adverse employment action occurred under

circumstances giving rise to an inference of retaliatory intent."  *Potenza*, 365 F.3d at 168.  The

Second Circuit has held that at the summary judgment stage, FMLA retaliation claims should be

---

[23] The Court notes that in addition to loss of pay, benefits, and employment, Plaintiff alleges that he suffered "emotional, psychological and physical pain and suffering in violation of [the FMLA]."  (SAC ¶ 74.)  However, courts have denied recovery for pain and suffering, emotional distress, or physical injury suffered as a result of an FMLA violation, "because the FMLA specifically lists the types of damages that an employer may be liable for, and it includes damages only insofar as they are the actual monetary losses of the employee such as salary and benefits and certain liquidated damages."  *Hamilton v. Niagara Frontier Transp. Auth.*, No. 00-CV-300, 2008 WL 4724324, at *6 (W.D.N.Y. Oct. 24, 2008); *see also Farrell v. Tri-Cnty. Metro. Transp. Dist. of Or.*, 530 F.3d 1023, 1025 (9th Cir. 2008) (concluding that recovery for emotional distress is not available under the FMLA, and collecting cases from the 5th, 6th, 7th, 8th, 10th and 11th Circuit Courts of Appeals that concluded the same); *Vicioso*, 1998 WL 355415, at *4 (holding that the FMLA does not allow "recovery for pain and suffering, anxiety, humiliation, physical injury, [or] emotional distress"); *Churchill v. Star Enters.*, No. 97-CV-3527, 1998 WL 254080, at *1, *6 (E.D. Pa. Apr. 17, 1998) ("Emotional damages, pain and suffering, are not compensable under [the FMLA]."); *Lloyd v. Wyo. Valley Health Care Sys., Inc.*, 994 F. Supp. 288, 289, 291-93 (M.D. Pa. 1998) (concluding "that the FMLA does not provide for damages for emotional distress, embarrassment, and humiliation").

analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Potenza*, 365 F.3d at 167-68. However, "a complaint asserting an employment discrimination claim, including an FMLA retaliation claim, need not plead specific facts establishing a prima facie case of discrimination in order to survive a motion to dismiss." *Peterson v. Long Island R.R. Co.*, No. 10-CV-480, 2010 WL 2671717, at *2 (E.D.N.Y. June 30, 2010); *see also Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 275-76 (S.D.N.Y. 2010). Instead, to state an FMLA retaliation claim, Plaintiff "need only show that [his] claims are plausible under *Iqbal* and *Twombly*," by "plead[ing] facts sufficient to state a claim to relief that is plausible on its face." *Harper v. N.Y.C. Hous. Auth.*, 673 F. Supp. 2d 174, 178, 180 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Boykin v. KeyCorp*, 521 F.3d 202, 212 (2d Cir. 2008) (holding that "the *McDonnell Douglas* burden-shifting framework is an evidentiary standard, not a pleading requirement, and that to require more than Rule 8(a)'s simplified notice pleading standard would unjustifiedly impose a heightened pleading requirement on the plaintiff" (internal quotation marks omitted)).

The *Drew* and *Harper* courts found that it was unnecessary "to test the dividing line between what constitutes sufficient pleading under *Swierkiewicz* and what constitutes sufficient facts to make the claim plausible under *Iqbal* and *Twombley*." *Drew*, 688 F. Supp. 2d at 277 (quoting *Harper*, 673 F. Supp. 2d at 179). The same is true here. Plaintiff has alleged facts that, if true, are sufficient to make his retaliation claim not only possible, but plausible, with respect to some of Defendants' alleged actions. Specifically, Plaintiff alleges that he was placed on attendance review because he used FMLA leave, which caused him to lose the right to earn overtime pay. (SAC ¶¶ 25-26.) He further alleges that after taking FMLA leave, Defendants improperly withheld thousands of dollars of his salary. (*Id.* ¶¶ 45-46.)

28

Moreover, despite Defendants' assertion to the contrary, Plaintiff has alleged a prima facie case of FMLA retaliation.  Defendants argue that Plaintiff failed to allege that he protested or opposed any practice by Defendants that was made unlawful by the FMLA under 29 U.S.C. §§ 2615(a)(2) and (b).  (Defs.' Mem. 12-13 (citing *Alessi*, 2010 WL 161488, at *9; *Belgrave v. City of New York*, No. 95-CV-1507, 1999 WL 692034, at *43 (E.D.N.Y. Aug. 31, 1999), *aff'd*, 216 F.3d 1071 (2d Cir. 2000) (summary order)).)  Yet, Plaintiff alleges that he protested Defendants' unlawful practice by complaining of the denial of his FMLA request to the DOL (SAC ¶ 23), informing Defendant Spano of the FMLA violations in his attendance review appeal (*id.* ¶¶ 27, 32), and filing grievances under the collective bargaining agreement, (*id.* ¶¶ 16, 29).[24] In addition, § 2615(a)(1), which prohibits employers from "interfer[ing] with . . . the exercise of [FMLA rights]," also prohibits retaliation.  Interference is defined to include "discriminating or *retaliating* against an employee . . . for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c) (emphasis added); *see also Potenza*, 365 F.3d at 167-68 (considering a § 2615(a)(1) retaliation claim); *Behringer v. Lavelle Sch. for the Blind*, No. 08-CV-4899, 2010 WL 5158644, at *14 (S.D.N.Y. Dec. 17, 2010) (recognizing that retaliation claim exists under § 2615(a)(1)); *Drew*, 688 F. Supp. 2d at 276-77 (determining that the plaintiff had stated a claim for retaliation under § 2615(a)(1)).  Thus, even if Plaintiff had not opposed any FMLA practice, his application for and use of FMLA leave was an exercise of rights protected under the FMLA.

---

[24] Plaintiff also alleges that he "engaged in protected activity under the FMLA by his attempts to enforce his rights under Title VII of the Civil Rights Act of 1964."  (SAC ¶ 61.) Plaintiff filed a discrimination charge with the EEOC on June 25, 2005.  (*Id.* ¶ 5.)  The Second Amended Complaint does not discuss the substance of nor basis for this charge, so the Court cannot assume it was related to an allegedly unlawful FMLA practice by Defendants. Additionally, the Parties' motion papers mention a November 2007 EEOC Complaint. However, this complaint to the EEOC is not mentioned at all in the Second Amended Complaint.

Defendants also maintain that "none of the alleged acts of retaliation [in the Second Amended Complaint] constitute adverse employment actions." (Defs.' Mem. 13.) The Court disagrees. Traditional adverse employment actions include "materially adverse change[s] in the terms and conditions of employment," such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation," or "refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225-26 (2d Cir. 2006) (internal quotation marks omitted). However, the Supreme Court has held that Title VII's anti-retaliation section applies more broadly to "employer actions that would have been materially adverse to a reasonable employee," and that such actions are "materially adverse" if they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). Accordingly, "in determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Zelnik*, 464 F.3d at 227). The Second Circuit has applied this Title VII retaliation adverse employment action definition to ADA retaliation claims, *see Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85, 90 (2d Cir. 2010) (summary order), and another court in this district recently held that this standard "should reasonably be applied to retaliation claims under the FMLA" as well, *Behringer*, 2010 WL 5158644, at *15 ("There is no basis to distinguish FMLA retaliation claims.").

Under this standard, several of Plaintiff's allegations may be considered adverse employment actions for purposes of his FMLA retaliation claim, including that he was placed on attendance review from April 24, 2006, through September 2006, resulting in the loss of his right to earn overtime pay (SAC ¶¶ 25-26, 36); that Defendants purportedly improperly withheld thousands of dollars of his salary between April 26, 2006, and May 5, 2007 (*id.* ¶¶ 45-46); and that Plaintiff allegedly "was harassed by his supervisors, taken off his post, and ordered to perform duties outside his job description," (*id.* ¶ 14).[25]  Some of these actions, such as placing Plaintiff on attendance review,[26] and the alleged improper withholding of Plaintiff's pay,[27] would constitute "materially adverse change[s] in the terms or conditions of employment."  *Zelnik*, 464 F.3d at 225.  The others, if proven true, would constitute adverse employment actions under the retaliation-specific standard set forth in *Burlington*, because they "could plausibly dissuade a reasonable worker from exercising [his] FMLA rights."  *Behringer*, 2010 WL 5158644, at *15.[28]

[25] Plaintiff's claims that his accrued benefits were improperly removed (SAC ¶¶ 10, 18), and that Defendant Turner interfered with his participation in the EAP (*id.* ¶ 44), may also be considered adverse employment actions under the *Burlington* standard.  However, as noted earlier, Plaintiff fails to specify when precisely these acts occurred.  Assuming they post-date April 1, 2006, Plaintiff may re-plead accordingly.

[26] The initiation of disciplinary proceedings against an employee, by itself, may not constitute an adverse employment action under the traditional definition.  *See Honey v. Cnty. of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002) ("[T]hreats of disciplinary action . . . do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation.").  Here, however, placing Plaintiff on attendance review had such "other negative results" – namely, subjecting him to a form of probation and leading to a reduction in his pay.

[27] *See Denton v. McKee*, 332 F. Supp. 2d 659, 664-65 (S.D.N.Y. 2004) (concluding that the plaintiffs' allegation that the defendants withheld money owed to them for certain pay periods was an adverse employment action).

[28] Plaintiff also alleges that on December 11, 2006, Defendants brought false charges against, imposed fraudulent discipline on, and maliciously prosecuted, him, resulting in a

31

Finally, several of the adverse employment actions "aris[e] under circumstances closely connected to [Plaintiff's] exercise of his right to FMLA leave." *Peterson*, 2010 WL 2671717, at *3. To establish an FMLA retaliation claim, Plaintiff must demonstrate that his use of FMLA leave, or his protest of an unlawful FMLA practice, constituted "a negative factor in [Defendants'] decision" to take an adverse employment action against him. *Sista*, 445 F.3d at 176. "However, Plaintiff is not required to demonstrate that there was a causal connection [between his statutorily protected activity and the adverse employment action] at the pleading stage, but only to set forth a legally cognizable claim." *Krosmico*, 2006 WL 3050869, at *3. Nevertheless, Plaintiff has adequately alleged that the imposition of attendance review and the removal of his accrued time – if done within the relevant statute of limitations – occurred under circumstances giving rise to an inference of retaliatory intent.[29] Accordingly, Defendants motion

---

"coerced and fraudulently induced settlement agreement, dated November 30, 2007, that contributed to Plaintiff's loss of benefits, compensation, and employment." (SAC ¶ 49.) Plaintiff does not provide any facts regarding the subject of these charges or the type of discipline, nor any information about the settlement agreement, let alone the reasons why it was coerced and fraudulent. Generally, settlement bars an employee from asserting that the same facts constitute an adverse employment action. *See Hseuh v. Bank of N.Y.*, No. 05-CV-5345, 2005 WL 2842069, at *3 (S.D.N.Y. Oct. 31, 2005) ("An employee may waive his federal claims of discrimination . . . provided the waiver is knowing and voluntary."); *Johnson v. Frank*, 828 F. Supp. 1143, 1151 (S.D.N.Y. 1993) ("An aggrieved employee who voluntarily settles a claim waives his right to bring a subsequent employment discrimination suit based on the same fact situation."). The *Hseuh* court granted a motion to dismiss a claim that had been settled, based on eight factors used to determine if the waiver was knowing and voluntary. *See Hseuh*, 2005 WL 2842069, at *3-4. Plaintiff here broadly alleges that the settlement was coerced and fraudulent, but provides no specific factual allegations plausibly substantiating that legal claim (particularly in light of the fact that he does not provide any information about the charges or discipline themselves). Plaintiff may add specificity regarding this claim in his Third Amended Complaint.

[29] As currently pled, Plaintiff's termination on April 24, 2009, does not give rise to such an inference. Plaintiff's mother died on October 24, 2006, *see supra* n.4; therefore, his entitlement to FMLA leave ended on that date. Plaintiff has not specified that any of his protests of Defendants' allegedly unlawful FMLA practices occurred after his mother died. "[T]he passage of so much time between the expiration of [Plaintiff's] FMLA leave and the termination

to dismiss Plaintiff's FMLA retaliation claim is denied.[30]

### 3. Individual Defendants' Liability Under the FMLA[31]

Defendants also argue that all claims against the Individual Defendants should be

dismissed. (Defs.' Mem. 17-20.) The FMLA defines "employer" as:

> (A) In general
> The term "employer"--
>> (i) means any person engaged in commerce or in any industry or activity
>> affecting commerce who employs 50 or more employees for each working
>> day during each of 20 or more calendar workweeks in the current or
>> preceding calendar year;
>> (ii) includes--
>>> (I) any person who acts, directly or indirectly, in the interest of an
>>> employer to any of the employees of such employer; and
>>> (II) any successor in interest of an employer;
>> (iii) includes any "public agency", as defined in section 203(x) of this
>> title; and

---

of [his] employment does not admit of an inference of retaliation for exercising [his] FMLA rights." *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 538 (S.D.N.Y. 2009) (concluding that a three-month gap between the end of an employee's FMLA leave and termination is likely to be insufficient to give rise to an inference of retaliation). *But see Potenza*, 365 F.3d at 168 (stating that a two-month delay between Plaintiff's return from FMLA leave and removal from his post "does not completely vitiate his claim"). Here, a gap of more than two years, without other alleged facts connecting the termination to the FMLA, is insufficient to establish a retaliatory inference. Plaintiff may add facts demonstrating a causal nexus in his amended pleading.

[30] In their initial motion papers, Defendants did not dispute that Plaintiff was qualified for his position, although they contested the other elements of a prima facie FMLA retaliation claim. (Defs.' Mem. 11-12.) In their Reply Memorandum of Law, Defendants asserted, for the first time, that Plaintiff did not adequately allege that he was qualified for his position and that he in fact was not qualified. (Defs.' Reply 4-5.) However, as previously noted, the Court will not favorably consider an argument initially made in a reply brief. *See Yousef*, 327 F.3d at 115. In any event, although Plaintiff has not explicitly pled in the Second Amended Complaint that he was qualified, he has stated as much in his opposition papers (Smith Aff. ¶ 3), and could easily allege such in a Third Amended Complaint.

[31] Defendants assert that Plaintiff waived his claims against the Individual Defendants because he failed to respond to Defendants' arguments regarding individual liability. (Defs.' Reply 10.) The Court disagrees. Plaintiff addressed Defendants' arguments in his sur-reply letter, which the Court agreed to consider. (Dkt. No. 29.)

> > (iv) includes the Government Accountability Office and the Library of
> > Congress.
> (B) Public agency
> For purposes of subparagraph (A)(iii), a public agency shall be considered to be a
> person engaged in commerce or in an industry or activity affecting commerce.

29 U.S.C. § 2611(4).

As is clear from its language, the statute explicitly provides for individual defendant

liability.  However, the statute does not specify whether *public* employees may be held liable

under the FMLA when sued in their individual capacities.  Defendants argue that "numerous

[c]ourts have held that [they] cannot."  (Defs.' Mem. 19.)  The Sixth and Eleventh Circuits have

indeed reached that conclusion; however, the Fifth and Eighth Circuits have held the opposite,

and the Seventh Circuit, while not deciding the issue, has rejected the Sixth Circuit's reasoning.

*Compare Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cir. 2003), *and Wascura v. Carver*, 169

F.3d 683, 687 (11th Cir. 1999), *with Modica v. Taylor*, 465 F.3d 174, 184-86 (5th Cir. 2006),

*Darby v. Bratch*, 287 F.3d 673, 680-81 (8th Cir. 2002), *and Luder v. Endicott*, 253 F.3d 1020,

1022 (7th Cir. 2001).  The Second Circuit has not yet considered this question, nor have any

other district courts within this Circuit.[32]  District courts in other Circuits are similarly split on

this issue, but "[a] majority . . . have held that public employees may be subject to individually

liable [sic] under the FMLA."  *Rasic v. City of Northlake*, 563 F. Supp. 2d 885, 889 (N.D. Ill.

2008) (collecting cases).

---

[32] In one district court case, the court denied the plaintiff's motion to amend his
complaint to assert an FMLA claim against individual public defendants because the claim was
untimely.  *See Lambert v. N.Y. State Office of Mental Health*, No. 97-CV-1347, 2000 WL
863461, at *2 (E.D.N.Y. June 9, 2000), *aff'd*, 22 F. App'x 71 (2d Cir. 2001) (summary order).
The *Lambert* court did note that the Eleventh Circuit in *Wascura* "held that individual state
officers are not 'employers' within the meaning of the FMLA"; however, the *Lambert* court did
not consider that argument because the defendant had not raised it.  *Id.*

The Court finds the Fifth Circuit's reasoning in *Modica* to be persuasive, because a fair reading of the plain language of the statute does not exclude public employees from individual liability.  The Sixth Circuit in *Mitchell* advanced three arguments as to why public employees were not included: (1) the segregation of the individual liability and public agencies clauses; (2) the effect of commingling the clauses on other provisions of the FMLA; and (3) the contrast in the definitions of employer in the FMLA and the Fair Labor Standards Act ("FLSA").  *See Mitchell*, 343 F.3d at 832.  In *Modica*, the Fifth Circuit addressed each of these arguments.

First, the *Mitchell* court observed that § 2611(4)(A) "lacks any punctuation demonstrating an inter-relationship between clauses (ii)-(iv)," and that "the separation of otherwise related concepts (i.e., what the term 'employer' 'includes') into distinctly enumerated clauses compels an interpretation that treats each clause in an independent manner."  *Id.* at 830; *see also Sadowski v. U.S. Postal Serv.*, 643 F. Supp. 2d 749, 755 (D. Md. 2009) (noting that clause (ii) is broken down in a manner indicating that Congress intended its subparts to be interrelated, whereas the word "includes" before each of clauses (ii)-(iv) indicates they were intended to be exclusive of one another).  The *Modica* court disagreed, deciding that the word "and" following clause (iii) suggested some relationship between clauses (ii)-(iv), and the em dash following "employer" evinces "a relationship between clauses such that employer 'means' what is provided for in subparagraph (i) and 'includes' what is provided for in subparagraph (ii), (iii), and (iv)."  *Modica*, 465 F.3d at 185 (internal quotation marks omitted); *see also Rasic*, 563 F. Supp. 2d at 890 ("[T]he structure of [§ 2611(4)] makes clear that the definition of employer includes both the individuals who act[] in the interest of an employer with respect to employees, and public agencies . . . [and] does not lead us to conclude that the individual liability provision applies only to private employers.").

35

Second, the *Mitchell* court stated that "commingling" the public agency provision in (iii) with the definition of employer in (i) and the individual employee liability provision in (ii) renders superfluous the § 2611(4)(B) definition of public agency, because public agencies are deemed to be engaged in commerce and are covered by the FMLA without regard to the number of employees, whereas private employers are only covered if they engage in commerce and have 50 or more employees. *See Mitchell*, 343 F.3d at 830-31. In addition, the *Mitchell* court found that commingling the clauses led to an "untenable" result and was an "exercise in absurdity," because it implied that the General Accounting Office and Library of Congress – included in the definition of employer by clause (iv) – could have successors in interest under clause (ii)(II). *Id.* at 831. However, the *Modica* court held that this reading did not make § 2611(4)(B) superfluous; rather, "it relieves plaintiffs of the burden of proving that a public agency is engaged in commerce." *Modica*, 465 F.3d at 186. Furthermore, it is not "absurd[] for Congress to address, in one statutory section, an event such as successorship that might apply to one type of employer and not to another." *Rasic*, 563 F. Supp. 2d at 891.

Third, the *Mitchell* court explained that while the FMLA and FLSA have substantially similar definitions of employer, "in the FMLA, Congress explicitly took 'Public Agency' out of the private employer definition and disconnected it from liability based on a person acting directly or indirectly in the interest of an employer.[33] Therefore, a better way to view the situation is that the FMLA corrected the ambiguity of the FLSA, as opposed to letting the ambiguity of the FLSA control the interpretation of the FMLA." *Mitchell*, 343 F.3d at 832

---

[33] The FLSA defines employer to "include[] any person acting directly or indirectly in the interest of any employer in relation to an employee and includes a public agency . . . ." 29 U.S.C. § 203(d).

36

(quoting *Keene v. Rinaldi*, 127 F. Supp. 2d 770, 775 n.2 (M.D.N.C. 2000)).  The *Modica* court

disagreed, citing numerous cases that concluded that "employer" should be interpreted

consistently under both statutes, as well as an FMLA regulation adopting the FLSA's

combination of the two clauses in one sentence.  *See Modica*, 465 F.3d at 186 ("Employers

covered by FMLA also include any person acting, directly or indirectly, in the interest of a

covered employer to any of the employees of the employer, any successor in interest of a

covered employer, and any public agency." (quoting 29 C.F.R. § 825.104(a))).

The Court agrees with the reasoning of the *Modica* court.  "The most straight forward

reading of the text compels the conclusion that a public employee may be held individually

liable under the FMLA."  *Id.*; *see also Rasic*, 563 F. Supp. 2d at 892 (Congress "plainly has

chosen to subject individual employees who 'act in the interest of the employer' with respect to

employees to personal liability.  We find no evidence in the statutory language or structure that

Congress meant to do so only for private, and not public, employees.").  Congress did not

specifically exclude public employees from FMLA liability, and the Court will not do so here.

Therefore, the Individual Defendants sued in the instant action in their individual

capacities are not automatically exempt from liability under the FMLA by virtue of being public

employees.  However, each of the Individual Defendants must still qualify as an employer under

§ 2611(4)(A)(ii)(I).  In assessing individual liability under the FMLA, district courts within the

Second Circuit have applied the FLSA test of "whether, as a matter of economic reality, an

entity is an employer for purposes of the FLSA" to the FMLA because the FMLA definition of

employer "tracks that of the FLSA."  *Augustine v. AXA Fin., Inc.*, No. 07-CV-8362, 2008 WL

5025017, at *3 (S.D.N.Y. Nov. 24, 2008) (internal quotation marks omitted); *see also Johnson v.

A.P. Prods., Ltd.*, 934 F. Supp. 625, 628-29 (S.D.N.Y. 1996) (finding that the FMLA "extends to

all those who controlled in whole or in part [Plaintiff's] ability to take a leave of absence and

return to [his] position." (internal quotation marks omitted)).[34]  Thus, the Court must determine

"whether each named individual defendant controlled in whole or in part [] [P]laintiff['s] rights

under the FMLA." *Holt v. Welch Allyn, Inc.*, No. 95-CV-1135, 1997 WL 210420, at *2

(N.D.N.Y. Apr. 15, 1997) (internal quotation marks omitted).  However, "[t]he economic reality

test is a factual inquiry that does not bear on the sufficiency of pleadings." *Augustine*, 2008 WL

5025017, at *3.  Thus, to survive a motion to dismiss, Plaintiff need not allege sufficient facts to

satisfy the economic reality test; instead, he must simply "plead that the proposed [I]ndividual

[D]efendants had substantial control over the aspects of employment alleged to have been

violated." *Id.* at *4.

Plaintiff adequately alleges such facts with respect to Defendants Spano, Turner, Gibson,

and Isler.  Plaintiff states that he appealed the imposition of attendance review and sent a

complaint letter to Defendant Spano, specifically asserting that such disciplinary action was a

violation of his FMLA rights.  (SAC ¶¶ 27, 31-33.)  Plaintiff also alleges that Defendant Turner

controlled Plaintiff being called for and placed on attendance review (*id.* ¶¶ 20-21, 25), sent

Plaintiff home upon his return to work for failing to obtain unnecessary medical clearance (*id.*

¶¶ 41-42), and interfered with his participation in the EAP, (*id.* ¶ 44).  Plaintiff further pleads

---

[34] The applicable regulations also indicate that courts should look to the FLSA for
guidance here:

> An 'employer' includes any person who acts directly or indirectly in the interest
> of an employer to any of the employer's employees.  The definition of 'employer'
> in section 3(d) of the Fair Labor Standards Act (FLSA), 29 U.S.C. 203(d),
> similarly includes any person acting directly or indirectly in the interest of an
> employer in relation to an employee.  As under the FLSA, individuals such as
> corporate officers 'acting in the interest of an employer' are individually liable for
> any violations of the requirements of FMLA.

29 C.F.R. § 825.104(d).

that Defendant Gibson wrongfully placed him on attendance review for his absence on dates he took FMLA leave. (*Id.* ¶¶ 26, 34.) Lastly, Plaintiff asserts that Defendant Isler sent him the October 24, 2006, letter improperly denying his request for an extension of his FMLA leave. (*Id.* ¶ 38.) *See Augustine*, 2008 WL 5025017, at *6 (stating that attaching a termination letter signed by an individual defendant to a complaint could present sufficient facts to support an FMLA claim against that defendant). Therefore, Plaintiff has adequately pled that Defendants Spano, Turner, Gibson, and Isler controlled Plaintiff's rights under the FMLA or had substantial control over the aspects of Plaintiff's employment that he alleges were violated.

In contrast, the Second Amended Complaint does not mention Defendants Pozzi or Lantz other than in the caption. Thus, Plaintiff has not alleged any conduct by them that could render them liable under the FMLA. Accordingly, the motion to dismiss the Second Amended Complaint as against Defendant Pozzi and Defendant Lantz is granted without prejudice to allow Plaintiff to amend the complaint as to these individuals.

### C. Plaintiff's Failure to Timely Serve the Individual Defendants

Defendants argue that the Second Amended Complaint must be dismissed with prejudice as to the Individual Defendants because Plaintiff failed to comply with the service requirements of Rules 4(e) and 4(m). First, Defendants assert that the Court does not have jurisdiction over the Individual Defendants as they were not properly served under Rule 4(e). (Defs.' Mem. 20-21.) This argument is without merit. Defendants admit that all of the Individual Defendants have now been properly served. (*Id.* at 3 ("Plaintiff finally served the [I]ndividual [D]efendants between December, 2009 and February, 2010.").) Thus, the Court currently has jurisdiction over the Individual Defendants. The cases cited by Defendants are inapposite, as they granted dismissal in situations where the defendants still had not been properly served.

39

Second, Defendants argue that the Second Amended Complaint should be dismissed as against the Individual Defendants due to Plaintiff's failure to serve them within the time limits prescribed by Rule 4(m).  (*Id.* at 22-24.)  "Rule 4(m) provides that if 'a defendant is not served within 120 days after the complaint is filed,' the court 'must dismiss the action without prejudice against the defendant or order that service be made within a specified time.'"  *de la Rosa v. N.Y.C. 33 Precinct*, No. 07-CV-7577, 2010 WL 1737108, at *6 (S.D.N.Y. Apr. 27, 2010) (quoting Fed. R. Civ. P. 4(m)).  Rule 4(m) further provides that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).  In addition, "district courts have discretion to grant extensions even in the absence of good cause."  *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007).  "This requires consideration of the prejudice to both parties," including factors such as "'(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff[']s request for relief.'"  *de la Rosa*, 2010 WL 1737108, at *7 (quoting *E. Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 506 (S.D.N.Y. 1999)).

In this case, the statute of limitations would bar some of Plaintiff's claims in a re-filed action.  In addition, all of the Individual Defendants clearly had notice of the claims asserted against them in the Second Amended Complaint as they were initially named in the Complaint, and counsel for Defendant Westchester filed a notice of removal on behalf of Defendant DOC and all of the Individual Defendants shortly after Plaintiff filed his initial complaint.  (Dkt. No. 1.)  *See Schweitzer ex rel. Schweitzer v. Crofton*, No. 08-CV-135, 2010 WL 3516161, at *10 (E.D.N.Y. Sept. 1, 2010) (finding that an individual defendant presumably had actual notice of

40

the existence of the complaint where the county's attorney filed a Notice of Appearance on the

individual defendant's behalf shortly after the complaint was filed).  The Individual Defendants

continue to be represented by the same attorney as Defendant Westchester and Defendant DOC,

and have also responded to Plaintiff's claims on the merits in this motion to dismiss.  *See*

*Cantone & Co. v. Seafrigo*, No. 07-CV-6602, 2010 WL 1488014, at *5 (S.D.N.Y. Apr. 12, 2010)

("[I]t is clear, based on the prior motion practice in this case, that [the defendant] had actual

notice of the claims in the complaint.").  These same facts undercut the Individual Defendants'

assertion that allowing the claims to proceed against them will prejudice them and "result in an

undue burden of litigation and expense" because they "were relying to their detriment upon

Plaintiff's continued failure to prosecute this action as against each of them."  (Defs.' Mem. 24.)

Having weighed the prejudice to both Parties, the Court, in its discretion, denies Defendants'

motion to dismiss the Second Amended Complaint as against the Individual Defendants because

of Plaintiff's delay in serving them.  *See Gore v. RBA Grp., Inc.*, No. 03-CV-9442, 2009 WL

884565, at *7 (S.D.N.Y. Mar. 27, 2009) (granting extension of time pursuant to Rule 4(m),

noting that "[e]xpiration of the statute of limitations is not dispositive" and that the defendant

"d[id] not dispute that it had actual notice of [the plaintiff's] claims"); *Castro v. City of New

York*, No. 05-CV-593, 2007 WL 3071857, at *8 (S.D.N.Y. Oct. 10, 2007) (granting extension

pursuant to Rule 4(m) when the plaintiff was reasonably diligent by serving copies of the

complaint on the New York City Law Department, without attaching summonses or providing a

copy for each defendant, and when all of the defendants had timely notice of the claims),

*adopted by* No. 05-CV-593, 2007 WL 3224748 (S.D.N.Y. Nov. 1, 2007).[35]

---

[35] The Court also notes that the Parties previously mentioned the possibility of a
preliminary injunction in letters they submitted to the Court on February 24, and March 3 and 5,

### III.  Conclusion

For the reasons stated herein, Defendants' motion to dismiss is granted in part and denied in part.  Plaintiff's Title VII claims are dismissed.  Defendant DOC is dismissed from this action with prejudice, and Individual Defendants Pozzi and Lantz are dismissed from this action without prejudice.  Defendants' motion to dismiss Plaintiff's FMLA interference claim is granted without prejudice, and Defendants' motion to dismiss Plaintiff's FMLA retaliation claim is denied.  Plaintiff is to file a Third Amended Complaint within thirty days of this Opinion.  The Clerk of Court is respectfully directed to terminate the pending motion.  (Dkt. No. 23.)

SO ORDERED.

DATED:      White Plains, New York
            February 14, 2011

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

---

2010.  (Dkt. Nos. 20-22.)  On March 9, 2010, the Court issued an Order directing the Parties to continue briefing the motion to dismiss, and stating that any application for injunctive relief would be considered after the motion was fully submitted.  (Dkt. No. 22.)  The Court will consider the appropriateness of such relief if Plaintiff makes a formal application, with evidence demonstrating that it is warranted, which to date he has not.

Service List (via Mail)

Roger Smith
64 Eastern Avenue
Ossining, NY 10562
Fax: (914) 923-4208
*Pro Se Plaintiff*

Irma W. Cosgriff, Esq.
Westchester County Attorney's Office
148 Martine Avenue, Room 600
White Plains, NY 10601
(914) 995-3577
Fax: (914) 995-3132
iwc1@westchestergov.com
*Counsel for Defendants*

43